IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

HEATH R.,[1]                                            Case No. 3:25-cv-01228-SB

              Plaintiff,                         **OPINION AND ORDER**

      v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

              Defendant.

---

**BECKERMAN, U.S. Magistrate Judge.**

      Heath R. ("Plaintiff") filed this appeal challenging the Commissioner of Social Security's ("Commissioner") denial of his application for application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-34. The Court has jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons explained below, the Court affirms the Commissioner's decision because it is free of harmful legal error and supported by substantial evidence.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party.

PAGE 1 – OPINION AND ORDER

**STANDARD OF REVIEW**

"As with other agency decisions, federal court review of social security determinations is limited." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). A federal court's review is limited because "[f]or highly fact-intensive individualized determinations like a claimant's entitlement to disability benefits, Congress places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency." *Id.* (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 621 (1966)). Adhering to this principle, courts "follow three important rules" in reviewing social security determinations. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).

First, courts "leave it to the [agency] to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Id.* (quoting *Treichler*, 775 F.3d at 1098). Second, courts "will 'disturb the Commissioner's decision to deny benefits only if it is not supported by substantial evidence or is based on legal error.'" *Id.* (quoting *Treichler*, 775 F.3d at 1098). Third, if the agency "'commits legal error, [courts] uphold the decision where that error is harmless,' meaning that 'it is inconsequential to the ultimate nondisability determination,' or that, despite the legal error, 'the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity.'" *Id.* (quoting *Treichler*, 775 F.3d at 1098); *see also Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021) ("And even where this modest [substantial evidence] burden is not met, [courts] will not reverse an [agency] decision where the error was harmless." (citing *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by regulation as recognized in Farlow v. Kijakazi*, 53 F.4th 485, 487 (9th Cir. 2022))).

///

PAGE 2 – OPINION AND ORDER

**BACKGROUND**

I.    **PLAINTIFF'S APPLICATION**

Plaintiff was born in May 1983, making him forty years old on December 29, 2023, his amended alleged disability onset date.[2] (Tr. 15, 18, 27, 42.) Plaintiff is a high school graduate who completed several years of graduate school coursework and has past relevant work experience as a community worker. (*Id.* at 27, 45-46, 61, 67, 279, 566-67.) In his DIB application, Plaintiff alleges disability due to migraines, posttraumatic stress disorder ("PTSD"), a mood disorder, headaches, nerve damage, and back, neck, knee, ankle, and shoulder pain. (*Id.* at 71, 78, 278.)

The Commissioner denied Plaintiff's application initially and upon reconsideration, and on August 1, 2024, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 15.) On January 29, 2025, Plaintiff and a vocational expert ("VE") appeared and testified at a telephonic hearing held before an ALJ. (*Id.* at 38-69.) On March 24, 2025, the ALJ issued a written decision denying Plaintiff's application. (*Id.* at 15-29.) On May 22, 2025, the Appeals Council denied Plaintiff's request for review, making the ALJ's written decision the final decision of the Commissioner. (*Id.* at 1-6.) Plaintiff now seeks judicial review of that decision.

///

///

---

[2] "[T]o be eligible for DIB, a claimant must prove continuous disability that began on or before the date last insured[.]" *Hasji v. Kijakazi*, No. 21-15319, 2023 WL 6458648, at *1 (9th Cir. Oct. 4, 2023) (first citing 42 U.S.C. § 423(a)(1)(A), (c)(1); then citing 20 C.F.R. § 404.131; and then citing *Flaten v. Sec'y of Health & Hum. Servs.*, 44 F.3d 1453, 1459 (9th Cir. 1995)); *see also Sam v. Astrue*, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (noting that "only disabilities existing before [the] date last insured establish entitlement to [DIB]" (citing *Vincent v. Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984) (per curiam))). Thus, to be eligible for DIB, Plaintiff must prove continuous disability that began on or before his date last insured of December 31, 2028. (Tr. 16, 18, 41.)

PAGE 3 – OPINION AND ORDER

## II.    THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than [twelve] months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011) (citation omitted). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

To establish a "prima facie case of a disability," a claimant must demonstrate "at steps one through four of the sequential evaluation process that she suffers from a severe impairment that prevents her from doing any work she has done in the past, or that she has a severe impairment and has no relevant past work[.]" *White v. Kijakazi*, 44 F.4th 828, 833 (9th Cir. 2022) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). If the claimant does so, "[t]he burden then shifts to the Commissioner at step five to establish that the claimant can perform a 'significant number[]' of jobs in the national economy given the claimant's physical and mental limitations, age, education, and work experience." *Id.* (first quoting 20 C.F.R. § 416.960(c)(2); and then citing *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002)). "If the Commissioner meets [his] burden, the claimant has failed to establish disability." *Thomas*, 278 F.3d at 955 (simplified).

///

PAGE 4 – OPINION AND ORDER

### III.    THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 15-29.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 29, 2023, his amended alleged disability onset date. (*Id.* at 18.) At step two, the ALJ determined that Plaintiff suffered from three severe impairments: "[A] spine disorder, depressive disorder, and [PTSD.]" (*Id.*) At step three, the ALJ found that Plaintiff does not suffer from an impairment that meets or medically equals a listed impairment. (*Id.*)

The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform "light work," subject to the following limitations: (1) Plaintiff can occasionally reach overhead, stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes, and scaffolds, (2) Plaintiff can frequently handle, finger, feel, and "reach in all other directions," (3) Plaintiff can occasionally "interact with coworkers and supervisors" but never "interact with the [general] public," and (4) Plaintiff can "understand, remember, and carry out simple instructions." (*Id.* at 20.) At step four, the ALJ concluded that Plaintiff was unable to perform his past relevant work as a community worker. (*Id.* at 27, 65-66.) Finally, at step five, the ALJ determined that Plaintiff was not disabled because a significant number of jobs existed in the national economy that he could perform, including work as a marker, housekeeping cleaner, and routing clerk. (*Id.* at 28, 65-66.)

### DISCUSSION

The sole assignment of error that Plaintiff raises in this appeal is that the ALJ erred by failing to provide clear and convincing reasons, supported by substantial evidence, for discounting his symptom testimony. (Pl.'s Opening Br. at 1, ECF No. 9; Def.'s Br. at 2, ECF No. 10; Pl.'s Reply Br. at 1, 5, ECF No. 12.) As explained below, the Court finds that the ALJ's

decision is free of harmful legal error and supported by substantial evidence and thus affirms the Commissioner's decision.

## I.    APPLICABLE LAW

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (simplified).

## II.    ANALYSIS

There is no evidence of malingering here and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (*See* Tr. 21, reflecting that the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms"). The ALJ was therefore required to provide clear and convincing reasons for discounting Plaintiff's symptom testimony. *See Ghanim*, 763 F.3d at 1163. The Court concludes that the ALJ met that standard here.

### A.    Preliminary Considerations

"[T]he 'clear and convincing' standard requires an ALJ to show his work[.]" *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (quoting *Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir.

PAGE 6 – OPINION AND ORDER

2021)). That "assure[s a] reviewing court that [the ALJ] did not arbitrarily discredit [the claimant's] testimony." *Cope v. Bisignano*, No. 25-2337, 2026 WL 1134289, at *1 (9th Cir. Apr. 27, 2026) (simplified). Satisfying this standard turns on "whether the ALJ's rationale is clear enough that it has the power to convince," not on "whether [the] court is convinced[.]" *Smartt*, 53 F.4th at 499.

In evaluating the sufficiency of the ALJ's rationale, a court may not "'second-guess' an ALJ's reasonable interpretation of a claimant's testimony." *Id.* at 500 (first quoting *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); and then citing *Thomas*, 278 F.3d at 959); *see also Treichler*, 775 F.3d at 1098 ("[Courts] leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record.") (simplified). A court must instead ask whether the ALJ's rationale for discounting the claimant's testimony is supported by "substantial evidence in the record as a whole"; that is, "more than a mere scintilla" of evidence, which is "not [a] high" evidentiary threshold and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ahearn*, 988 F.3d at 1115 (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019)); *cf. Chen v. Bisignano*, No. 25-3588, 2026 WL 1427028, at *1-2 (9th Cir. May 21, 2026) ("Substantial evidence requires 'more than a mere scintilla' of evidence but does not require more than 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion' when considering the entire record. . . . The ample record evidence relied on by the ALJ is 'more than a mere scintilla' of evidence to support his decision to discount [the claimant's] subjective symptom testimony." (quoting *Biestek*, 587 U.S. at 103)).

Applying these principles below, the Court finds that substantial evidence supports the ALJ's discounting of Plaintiff's testimony. Before turning to the clear and convincing reasons

PAGE 7 – OPINION AND ORDER

that the ALJ provided for doing so, it is important to consider at the outset that the ALJ "did not fully discount" Plaintiff's testimony and accounted for his physical and mental limitations in formulating the RFC. *Cf. Morrow v. Bisignano*, No. 24-3711, 2025 WL 1924900, at *2 (9th Cir. July 14, 2025) ("Notably, the ALJ recognized that [the claimant] does have limitations in his ability to stand, walk, and sit, which the ALJ incorporated into his [RFC] . . . finding that [he] can sit for six hours a day and stand and walk for three hours a day. But the ALJ ultimately determined that [his] allegations of even greater limitations were inconsistent with the foregoing examination findings in [his] medical records. That rationale is clear enough that it has the power to convince[.]") (simplified); *see also Burns v. Bisignano*, No. 24-4199, 2025 WL 1937448, at *2 (9th Cir. July 15, 2025) ("Notably, the ALJ did not fully discount [the claimant's] testimony and accounted for her physical and mental limitations in the RFC determination.") (simplified); *Austin v. Dudek*, No. 23-3602, 2025 WL 957499, at *1-2 (9th Cir. Mar. 31, 2025) ("In addition, the ALJ considered [the claimant's] alleged impairments, incorporating several 'precautionary' measures in the [RFC] determination . . . , even where there was limited or conflicting evidence.").

For example, the ALJ explained that in formulating the RFC and its "exertional and non-exertional limitations," she "considered" the imaging of Plaintiff's cervical spine to the extent that it "support[ed] his complaints of neck pain." (*See* Tr. 21, making this finding in evaluating Plaintiff's testimony about his "physical impairment[s]" and "neck and upper back pain"). Similarly, and despite potential evidence "[t]o the contrary," the ALJ "consider[ed]" Plaintiff's (1) "reported panic attack at a Costco store" in formulating an RFC that "preclude[d] contact with the public," and (2) "subjective self-reports" to the extent that they were consistent with the

RFC's "cognitive limitations." (*See id.* at 24-25, making this finding and citing Ex. 11F at 47-48, i.e., Tr. 791-92).

### B.    Reported Activities

To the extent the ALJ declined fully to credit Plaintiff's symptom testimony, the Court finds that the ALJ provided clear and convincing reasons, supported by substantial evidence, for doing so.

It is well established that an ALJ may discount a claimant's symptom testimony based in part on an inconsistency between his claimed limitations and reported activities. In *Burrell v. Colvin*, 775 F.3d 1133, 1137-38 (9th Cir. 2014), the Ninth Circuit confirmed as much, noting that "[i]nconsistencies between a claimant's testimony and the claimant's reported activities provide a valid reason for an adverse credibility determination." *Id.* (citing *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)); *see also Garrison*, 759 F.3d at 1016 (stating that if a claimant's "level of activity" is "inconsistent with [his] claimed limitations," an ALJ may discount the claimant's testimony based on his reported "activities") (simplified); *Ghanim*, 763 F.3d at 1165 ("Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." (first citing *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); and then citing *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004))).

Here, the ALJ discounted Plaintiff's testimony on the ground that his "self-report[ed]" activities suggested that his "chronic pain," including "neck and back pain," was "not as limiting as he allege[d.]" (Tr. 21-22; *see also id.* at 20, revealing that immediately before finding that Plaintiff's statements were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision," the ALJ described Plaintiff's testimony and explained that he "alleges that due to pain, he is unable to handle operating a riding mower

PAGE 9 – OPINION AND ORDER

[and] he only mows the lawn twice a year, but treatment records discussed below show him reporting that pruning fruit trees and performing other yard work is a means of self[-]soothing and maintaining his 'serenity'"). In support, the ALJ observed that on June 6, 2024, nearly six months after his amended alleged disability onset date of December 29, 2023, Plaintiff attended a medication management visit and reported "working on his house," "losing his cell phone at a waterfall," and "getting an elliptical machine." (*Id.* at 21, quoting and citing Ex. 8F at 31, i.e., Tr. 612; *cf.* Tr. 612, confirming that Plaintiff reported that his "[h]eadaches and pain ha[d] been horrible" and he had "pi[n]ched nerves in [his] spin[e]," but he also reported that he had "[b]een working on the house[,] got a fridge and a[n] el[l]iptical [machine, and he l]ost [his] phone in [a] waterfall").

In addition to these findings, the ALJ emphasized that (1) "despite his allegedly disabling pain," Plaintiff reported "engag[ing] in activities" suggesting that his pain was not as severe as he alleged (e.g., "yardwork," "pruning fruit trees," "wa[l]king his dog[]," and "playing guitar"), and (2) Plaintiff's "apparent[ly] intact physical activities significantly undermine[d]" his "allegation of disability, in part[] due to chronic pain." (*Id.* at 22.) The ALJ subsequently highlighted the "level of activity" that Plaintiff reported during the "psychosocial/behavioral health pain evaluation" that the Department of Veterans Affairs' ("VA") multidisciplinary pain management clinician team,[3] Meenakshi Dogra, M.D. ("Dr. Dogra"), Irvan Bubic, M.D. ("Dr. Bubic"), and Nina Hidalgo, Ph.D. ("Dr. Hildago"), conducted in December 2024. (*Id.* at 22-23, citing Ex. 11F at 32-42, i.e., Tr. 776-86.) The ALJ explained that she found this activity

[3] The Court notes that Plaintiff appeared remotely for the consultative exams that the VA's Center for Integrative Pain Care ("CIPC") team—which is "compris[ed] of physicians" (i.e., Drs. Bubic and Dogra, the latter of whom serves as the CIPC's director) and a "[p]ain [b]ehavioral health psychologist" (i.e., Dr. Hildago)—conducted on December 24, 2024. (Tr. 771-86.)

PAGE 10 – OPINION AND ORDER

level "consistent with" her RFC and its "exertional, postural, reaching, and manipulative limitations." (*Id.*)

Plaintiff agrees that the ALJ found his reported activities incompatible with his claims of debilitating pain.[4] (*See* Pl.'s Opening Br. at 6-7, stating that the ALJ relied on Plaintiff's "self-reports" in finding that his "neck and back pain [was] not as limiting as he allege[d]" and his "engagement in activities" in rejecting his "reports of disabling pain" (citing Tr. 21-22)). Plaintiff, however, argues that there are four reasons why the ALJ committed reversible error:

- the ALJ "ignore[d]" that he also reported that his "headaches and pain ha[d] been horrible" during his medical visit on June 6, 2024,

- he testified that doing chores "worsens his neck pain and causes headaches,"

- neither the record nor the explanations that the ALJ provided in her decision demonstrate any facial or factual inconsistency between his testimony and the "particular outing" on which he "los[t] his cellphone at a waterfall" or his acquisition or use of an elliptical machine, and

---

[4] A court is "not permitted to affirm the Commissioner on a ground upon which the Commissioner did not rely, but [it] . . . is permitted to consider additional support for a ground on which the ALJ relied." *Fenton v. Colvin*, No. 6:14-cv-00350-SI, 2015 WL 3464072, at *1 (D. Or. June 1, 2015) (citing *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1005 n.3 (9th Cir. 2006)). Thus, the Court may consider additional support for the ALJ's specific finding that Plaintiff's reported activities were inconsistent his allegations of chronic and debilitating pain. (*See generally* Pl.'s Reply Br. at 1-3, arguing that the Commissioner improperly draws the necessary links and "connections" between some of Plaintiff's reported activities and reasons for alleging that his pain is debilitating and that the Court "may consider only th[e] reasons" upon which the ALJ relied, not any "post hoc rationalization" that the Commissioner advances in this appeal) (simplified).

PAGE 11 – OPINION AND ORDER

- he need not be "relegated to vegetating in a dark room" to be disabled and "[o]ccasional symptom-free periods . . . are not inconsistent with disability."

(*Id.* at 6-8; Pl.'s Reply Br. at 1-3.)

Plaintiff "offers a different interpretation" of the record that "tend[s] to corroborate [his]testimony[, b]ut simply offering an alternative interpretation of the record does not demonstrate the ALJ committed reversible error." *Jarrett v. O'Malley*, No. 23-3565, 2024 WL 4707890, at *1 (9th Cir. Nov. 7, 2024) (first citing *Smartt*, 53 F.4th at 494; and then citing *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008)). After all, "[w]here the [record] evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Smartt*, 53 F.4th at 494 (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)); *see also Hougas Bisignano*, No. 24-5650, 2025 WL 2964997, at *2 (9th Cir. Oct. 21, 2025) (affirming the ALJ's decision because the claimant "offer[ed] an interpretation of the record evidence that support[ed] his subjective complaints—but [did] not undermine the ALJ's rational alternative interpretation of the record" (citing *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020))).

The Ninth Circuit's decision in *Berry v. Astrue*, 622 F.3d 1228, 1234-35 (9th Cir. 2010), is illustrative of this principle. In that case, the Ninth Circuit reviewed an ALJ's discounting of a claimant's testimony based on "contradictions between complaints in [his] . . . activity questionnaire and hearing testimony and some of his other self-reported activities." *Id.* at 1234. The Ninth Circuit explained that "[o]n the one hand, some of [the claimant's] statements supported his hearing testimony" and portions of his activity questionnaire, but "[o]n the other hand, some of [his] other self-reported activities and self-evaluations suggested a higher degree

PAGE 12 – OPINION AND ORDER

of functionality." *Id.* at 1234-35. Although the record was susceptible to more than one rational interpretation, the Ninth Circuit affirmed that the ALJ's decision because it "agree[d]" that the record "support[ed] . . . and justif[ied the ALJ's] decision to discount some of [the claimant's] subjective complaints." *Id.* at 1235 (citing *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009)).

Similarly here, Plaintiff advances an alternative interpretation of the record that is rational, but substantial evidence nevertheless supports the ALJ's partial discounting of his testimony because he reported engaging in activities incompatible with his allegations of debilitating pain. *See Chen*, 2026 WL 1427028, at *1-2 (holding that the ALJ satisfied the clear and convincing reasons standard, as "'more than a mere scintilla' of evidence . . . support[ed the ALJ's] decision to discount [the claimant's] subjective symptom testimony" (quoting *Biestek,* 587 U.S. at 103)).

Consider Plaintiff's testimony at the administrative hearing. In support of his allegation of debilitating back and neck claim, Plaintiff estimated that his average week consists of "less than [thirty] minutes" of "chores" and "household tasks" because he can tolerate no more "five minutes" of "light duty" (e.g., "running water in a cup") and "maybe one to three minutes" of "trying to wash dishes" before his "mid-back . . . starts screaming," the "muscles that go up into [his] neck" start to tighten up, he develops pain that "feels like . . . someone [is] dragging a cold knife down the bone" and "kind of blinds [him] out with . . . white spots and headaches," and he needs to "lay down." (Tr. 53-54.) Plaintiff added that (1) he must "steer clear" of heavier pans," (2) by December 2023, he "require[d] recumbency" a "quarter to a third" and at times "half" of "every day" during "daylight hours" because if he "do[es] something three minutes" or "ha[s] a flare up," he needs to "go lay down" and "stretch, rest and recover," (3) his arms "go[] numb"

PAGE 13 – OPINION AND ORDER

when he lies prone during "recovery period[s,]" and (4) when he traveled to California in June 2023 and April 2024 to "get legally married" and then hold a "wedding ceremony" that family could attend, he needed to take his medication, recline the passenger seat, keep his "eyes closed," and "just wish[] that it was done" because "it hurt[]" and he "could[ not] move." (*Id.* at 54-55, 60-62.)

Now consider some of the reported activities upon which the ALJ relied and that Plaintiff's providers recorded. These reports confirm that the ALJ's interpretation of the record was reasonable and substantial evidence supports the ALJ's partial discounting of Plaintiff's testimony:

- June 8, 2023: Approximately three months after the initial and six months before the amended alleged disability onset dates of March 29 and December 29, 2023, Plaintiff attended a "medication management visit" with Shannon Smith ("Nurse Smith"), a psychiatric mental health nurse practitioner at the Portland VA Medical Center. (Tr. 450-53; *cf. id.* at 41-42, January 29, 2025, the ALJ reported an "alleged onset date of March 29, 2023" and Plaintiff's counsel asked to "amend the alleged onset date to [December 29, 2023] for myriad reasons"). Nurse Smith noted that Plaintiff reported that he was "[e]mbracing his life," "living with his brother," "getting married in a few weeks," and finding it "[h]ard to concentrate on finishing his graduate school," he recently visited "the Redwoods" and "Mount St[.] Helens," and he had been "gaming,"

PAGE 14 – OPINION AND ORDER

"playing music," "working on [his] music studio," "working on the
house," and "working on projects around the house."[5] (*Id.* at 451.)

- July 13, 2023: Plaintiff attended a medication management visit and
  reported that he "got married," his graduate school program was "[a]lmost
  complete," and he was "working on his last weeks." (*Id.* at 436.)

- August 24, 2023: Plaintiff informed Nurse Smith that he had been
  "playing his banjo and his saxophone," recently "[f]inished graduate
  school," and considered "getting an inter[n]ship." (*Id.* at 432.)

- March 21, 2024: Plaintiff reported that his "uncles may be coming to stay
  with him" and "social security disability would help set him free." (*Id.* at
  628.)

- May 2, 2024: Plaintiff reported that he visited "Point Arena," California
  for a post-wedding "family party," he had a "great time" and "good visit

---

[5] Plaintiff reported engaging in similar activities less than a year before the initial alleged disability onset date. (*See* Tr. 492, August 18, 2022, Plaintiff had "[b]een doing some hiking and . . . hanging out with his brother" and "[f]inished another course in graduate school"; *id.* at 498, June 16, 2022, Plaintiff planned to pick up a family member in Los Angeles and reported "[g]etting a song out every [three to four] days," "[w]orking on his studio," "mowing his yard," and throwing "out his back"; *id.* at 506-07, May 18, 2022, Plaintiff was "doing well overall," going "outside every day," "writing music, working on an album, hiking, [and] working on his home and yard"; *see also id.* at 567-68, March 19, 2024, Plaintiff's stated that about "one year" earlier, he was "fired" from a "behavioral response unit associated with the Longview Police Department" because he engaged in "gross misconduct [by] providing a beer to a homeless individual," which he "rationalized as an attempt to establish rapport"; *id.* at 456, April 5, 2023, Plaintiff stated that he was "under investigation" at work and did not "like the stress [it] caused," "believe[d] it [was] time to quit [his] job working with homeless and police," and "prefer[red] to focus on [his] family, school, and future employment"; *id.* at 459, March 31, 2023, Plaintiff wanted to transition from "a woodburning fireplace" to "furnace heat" and "stopped smoking marijuana" because he could not "tolerate the smoke," exposure to smoke made him feel nauseous and vomit, and it was too "taxing on [his] back" to "constantly split[] wood and carry[ it] into [his] home").

with [his u]ncles," he enjoyed "catching up" with his uncles, and he and his wife had "some moments of genuine happiness." (*Id.* at 616-18; *cf. id.* at 61-63, testifying about this gathering).

- June 6, 2024: During a medication management visit, Plaintiff stated that his "[h]eadaches and pain ha[d] been horrible" and he had "pi[n]ched nerves in [his] spin[e]," but he also reported that he had "[b]een working on the house" and recently "got a fridge and a[n] elliptical" machine and "[l]ost [his] phone in [a] waterfall." (*Id.* at 612-15.)

- August 13, 2024: Plaintiff "[q]uit smoking more weed," suffered a PTSD flare-up, continued to feel "jacked up after a couple of weeks," "very threatened," and "scared that he might have to hurt somebody," planned to attend "a festival" next month, and visited the Portland Farmers Market and found it "triggering." (*Id.* at 994-95.)

- September 26, 2024: Plaintiff informed Nurse Smith that he recently "[w]ent to [an] Equinox festival and had a really good time," the festival was "better than the last one," he "[w]as able to dance," and he was "not having many [mental] complaints." (*Id.* at 986.)

- October 21, 2024: Plaintiff completed a VA pain care questionnaire and reported that he "participate[d] in . . . physical activities or exercise" every day during the previous week and that his physical activities or exercise consisted of "walk[ing his] dog for around [an] h[ou]r." (*Id.* at 887.) Plaintiff also used a five-point scale to rate his willingness to engage in activities to improve his pain care and assigned scores of five to water

PAGE 16 – OPINION AND ORDER

aerobics, pool therapy, yoga, tai chi, movement therapies, "increas[ing] his activity level, e.g., day to day, recreation, leisure," improving his nutrition and diet, and working toward a healthier weight, a score of four to regular exercise and stretching, and scores of one to learning skills to reduce his irritability, depression and anxiety and stress management and relaxation skills and attending chronic pain management and pain science education groups. (*Id.* at 882) (simplified).

- December 24, 2024: About one year after the amended alleged disability onset date of December 29, 2023, Dr. Hildago, a VA psychologist, noted that Plaintiff reported that his "[e]xercise/daily activities" consisted of "walking [his] dog for [an] h[ou]r daily, play[ing] guitar [three to five] min[ute]s at a time, video games, yardwork, [and] reading," his "[a]ctivities/hobbies/interests" included being a "musician," he was "[s]atisified with [his] social life/social support" centered on his "wife, music shows, [and going] outside as much as possible," and he used "cannabis daily" and "vape[d a quarter of an ounce] every [four] days." (*Id.* at 778-79.)

- December 24, 2024: Plaintiff informed Dr. Hildago that he "typically copes with pain by walking his dog daily, eating a healthy diet, managing his overall health and mental health, and light stretching," he no longer worked as "crisis counselor contracting with the police," he "spen[t] his days working on [his] 'serenity' through pruning fruit trees/yardwork, reading, playing guitar, pacing his activities, walking his dog, and

PAGE 17 – OPINION AND ORDER

spending time with his wife and brother," and his "last [four] years ha[d] been very stressful" but he was "grateful" because he "fe[lt] more stable," "more at peace," and "jolly" over the "last [two] months." (*Id.* at 780.) Based on her "behavior health assessment" (i.e., a "brief behavioral health screening" that was "based on a brief interview and review of records," "part of an interdisciplinary evaluation with multiple providers," and "not a general psychological assessment"), Dr. Hildago opined that "[o]verall, [Plaintiff] appear[ed] to be coping adequately with mild to moderate pain-related functional interference and related distress." (*Id.* at 776, 780.)

On this record, the Court concludes that Plaintiff fails to demonstrate that the ALJ committed reversible error in partially discounting his testimony because his reported activities were inconsistent with his allegation of debilitating neck and back pain. Where the longitudinal record is susceptible to more than one rational interpretation, the Court must uphold the ALJ's conclusion. *See Ford*, 950 F.3d at 1154 ("If the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.") (simplified); *cf. Jarrett*, 2024 WL 4707890, at *1 ("[S]imply offering an alternative interpretation of the record does not demonstrate the ALJ committed reversible error.") (citations omitted); *see also Smartt*, 53 F.4th at 499 ("The ALJ made a reasonable determination based on specific, clear, and convincing evidence that [the claimant's] activities were inconsistent with the alleged severity of her limitations.").

### C.    Conflicting Medical Evidence

The ALJ also discounted Plaintiff's testimony based in part on conflicting medical evidence. (*See, e.g.*, Pl.'s Opening Br. at 10, stating that the ALJ discounted Plaintiff's testimony regarding the alleged severity of his mental impairments "based on normal objective findings"

PAGE 18 – OPINION AND ORDER

(citing Tr. 24)). Contrary to Plaintiff's arguments, substantial evidence supports the ALJ's finding.

Ninth Circuit precedent confirms that it is appropriate for an ALJ to discount a claimant's symptom testimony based on conflicting medical evidence. In *Smartt*, for example, the Ninth Circuit held that "[t]he ALJ properly discounted [the claimant's] subjective [symptom] testimony and self-reported limitations[, in part] because . . . the objective medical evidence was inconsistent with those limitations[.]" 53 F.4th at 496-97. In support of its holding, the Ninth Circuit explained, among other things, that "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.'" *Id.* at 499 (quoting *Carmickle*, 533 F.3d at 1161)).

The ALJ separately analyzed Plaintiff's testimony regarding his "mental impairments." (*See* Tr. 23-25.) The ALJ's findings included highlighting the "importan[ce]" of Nurse Smith's "cumulative notes" from Plaintiff's medication management visits, which did "not document [Plaintiff] . . . as objective[ly] exhibiting chronic disturbances of mood, affect, cognition, sensorium, interpersonal functioning, or grooming and hygiene that would be evidence of disabling psychological symptoms." (*Id.* at 24, finding this "[m]ore important[]" than other facts).

Plaintiff argues that the ALJ committed reversible error in discounting his testimony regarding his mental health symptoms and self-reported limitations based on conflicting medical evidence. (*See* Pl.'s Opening Br. at 8-10 & Pl.'s Reply Br. at 3-5, demonstrating that Plaintiff turns to the ALJ's evaluation of his testimony regarding his mental health symptoms and self-reported limitations after addressing the ALJ's evaluation of his testimony regarding his physical impairments). In making this argument, Plaintiff relies exclusively on the Ninth Circuit's

PAGE 19 – OPINION AND ORDER

decision in *Ghanim*, which addressed similar observations and Plaintiff argues supports the conclusion that the findings upon which the ALJ relied are insufficient to demonstrate an inconsistency with his testimony. (Pl.'s Opening Br. at 10 & Pl.'s Reply at 5, citing *Ghanim*, 763 F.3d at 1164.)

In *Ghanim*, the ALJ rejected the claimant's "testimony because he found it inconsistent with the treatment records." 763 F.3d at 1164. In support of this conclusion, the ALJ "cited treatment notes that discussed [the claimant's] 'good eye contact, organized and logical thought content, and focused attention'" and "pointed to several portions of the treatment notes that describe[d the claimant] as 'upbeat,' 'smiling very brightly,' and 'more talkative about positive things,' and one note from [a social worker] expressing surprise at [the claimant's] request for a caretaker." *Id.*

The Ninth Circuit held that the ALJ erred in rejecting the claimant's testimony based on this evidence. *Id.* The Ninth Circuit explained that the foregoing "observations of cognitive functioning during therapy sessions" failed to contradict [the claimant's] reported symptoms of depression and social anxiety" or demonstrate that the ALJ "viewed" the claimant's "treatment records . . . in light of the overall diagnostic record," as the ALJ was required to do. *Id.* (first citing *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); and then citing *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). The Ninth Circuit held that "when read as a whole," the claimant's "treatment notes [did] not undermine [his] testimony," as they "consistently reveal[ed] that, despite some occasional signs of improvement, [he] continued to suffer frequent nightmares, hallucinations, social anxiety, difficulty sleeping, and feelings of hopelessness." *Id.*

///

PAGE 20 – OPINION AND ORDER

Plaintiff argues that *Ghanim*'s holding precludes the ALJ's reliance on unremarkable mental status exams absent a "more thorough discussion." (*See* Pl.'s Opening Br. at 10 & Pl.'s Reply Br. at 4, "[I]n the context of mental health, the Ninth Circuit has rejected a[n ALJ's] reliance on these types of notes by themselves. . . . Simply pointing to these instances without a more thorough discussion does not show any contradiction between Plaintiff's testimony and the medical record." (citing *Ghanim*, 763 F.3d at 1164)). Plaintiff fails to demonstrate reversible error.

The Ninth Circuit's decision in *Ghanim* turned on case-specific facts from that claimant's overall diagnostic record. *See* 763 F.3d at 1157, 1160-62 (reflecting that before turning to the ALJ's subjective symptom analysis, the Ninth Circuit explained that the claimant had previously "been imprisoned [in Iraq] and tortured for two years" and his "brother, who lived in Iraq and worked with the United States military, was [later] killed" and held that the ALJ erred in discounting the opinions of the claimant's four treating mental health professionals, who prescribed the claimant "numerous anti-depressant and anti-anxiety medications" and opined that the claimant suffered from "marked cognitive and social impairment" and that it was "highly unlikely [that he] would be able to engage in meaningful adult activities or employment in the near future"). The Court does not read *Ghanim* as precluding the ALJ's reliance on the observations of cognitive functioning at issue here or requiring a more detailed discussion on why Plaintiff's consistently unremarkable mental status exams undermined his allegations of disabling psychological symptoms.

This is significant because the ALJ's rationale has the power to convince. (*See* Tr. 24, "[O]ther than complaints [about] having a panic attack at Costco and . . . increased symptoms in response to a brother with substance use problems moving in[to his home], the record does not

document [Plaintiff] making complaints of chronic mental health symptoms to [Nurse] Smith. More importantly, [Nurse] Smith's cumulative notes do not document [him] as objective[ly] exhibiting chronic disturbances of mood, affect, cognition, sensorium, interpersonal functioning, or grooming and hygiene that would be evidence of disabling psychological symptoms."). It is also significant because other cases and the record support the reasonableness of the ALJ's conclusion.

An ALJ does not err in discounting a claimant's symptom testimony based in part on "generally . . . normal mental status examinations," even if he can "point[] to other mental status examinations that tend to corroborate [his] testimony." *See Jarrett*, 2024 WL 4707890, at *1 (making a nearly identical finding in holding that the claimant failed to "demonstrate the ALJ committed reversible error" (first citing *Smartt*, 53 F.4th at 494; and then citing *Carmickle*, 533 F.3d at 1164)).

Further, substantial evidence supports the ALJ's findings that during the relevant period, Plaintiff's mental health treatment consisted almost exclusively of medication management with Nurse Smith, who consistently reported that Plaintiff generally had normal mental status exams.[6]

---

[6] The ALJ also declined fully to credit Plaintiff's testimony about his physical impairments because of conflicting objective and to the extent she found medical opinion evidence more persuasive and consistent with the record. (*See* Tr. 21-23, 25-27, addressing this part of Plaintiff's testimony before turning to the ALJ's evaluation of the medical opinion evidence and further consideration of Plaintiff's "report of intact activities" and ability to engage in certain activities; *see also id.* at 21, identifying other potential inconsistencies). In terms of conflicting objective evidence, the ALJ cited, among other things, an electromyography ("EMG") and nerve conduction velocity ("NCV") test that Plaintiff underwent on April 5, 2024, which was "normal" and revealed "[n]o EMG evidence" of cervical radiculopathy on "either side," "[n]o EMG/NCV evidence" of carpal tunnel syndrome on "either side," and "[n]o EMG/NCV evidence" of ulnar neuropathy on "either side." (*See id.* at 21-22, reflecting that the ALJ referred repeatedly to Plaintiff's April 2024 "nerve conduction study" and "testing," the "results of which were normal," and in doing so, cited or referenced Exhibit 8F at 46, i.e., Tr. 627; *see also id.* at 622, 627, listing Plaintiff's provider's summary of the EMG and NCV test).

(*See* Tr. 856-59, January 16, 2025; *id.* at 978-81, October 31, 2024; *id.* at 986, September 26, 2024; *id.* at 994-97, August 13, 2024; *id.* at 612-15, June 6, 2024; *id.* at 616-18, May 2, 2024; *id.* at 628-31, March 21, 2024; *id.* at 646-50, February 22, 2024; *id.* at 671-74, January 25, 2024; *id.* at 700-03, December 7, 2023; *id.* at 706-09, October 26, 2023; *id.* at 709-12, September 28, 2023; *id.* at 712-16, August 24, 2023; *id.* at 717-20, July 13, 2023; *id.* at 450-53, June 8, 2023; *id.* at 456-58, April 5, 2023; *id.* at 462-65, March 1, 2023; *id.* at 468-71, February 1, 2023; *id.* at 471-74, January 18, 2023; *id.* at 482-85, November 15, 2022; *id.* at 485-88, October 20, 2022; *id.* at 488-91, September 20, 2022; *id.* at 492-95, August 18, 2022; *id.* at 495-98, June 30, 2022; *id.* at 498-500, June 16, 2022; *see also id.* at 503-06, May 19, 2022, Plaintiff reported that he was "not interested in a daily depression medication"; *id.* at 466-67, February 8, 2023, Plaintiff "denie[d] any significant impairment in functioning as a result of clinical symptoms," identified "no therapy goal," reported that he "work[ed] in the mental health field as a first responder (locating homeless encampments)," and simply wanted "someone to talk to every [two to three] months in the event that he needs to 'just talk about what [he had] seen'"; *id.* at 571, March 19, 2024, a consultative psychologist noted that Plaintiff's "testing show[ed] the predominance of depression with respect to [his] . . . main psychiatric symptoms" and he "remain[ed] untreated for depression"; *id.* at 1001-04, June 28, 2024, Plaintiff reported "doing fine" during his annual

---

Plaintiff does not challenge the ALJ's evaluation of the medical opinion evidence. (*See* Pl.'s Opening Br. at 1, 3, 10-11; Pl.'s Reply Br. at 1, 5.) Plaintiff also agrees that the ALJ relied on his EMG and NCV test in discounting his testimony but suggests, without elaboration, that the ALJ erred in doing so because the ALJ found that some of his imaging results supported his testimony and his provider noted that an "EMG cannot entirely exclude cervical radiculopathy" and "[r]ecommend[ed] repeat testing if [his cervical radiculopathy] symptoms worsen[ed]." (*See* Pl.'s Opening Br. at 7, citing Tr. 627; Tr. 622.) The Court finds these arguments unpersuasive because the ALJ was entitled to resolve such conflicts and only partially discounted Plaintiff's testimony. *See Slayton v. O'Malley*, No. 22-16883, 2024 WL 637482, at *1 (9th Cir. Feb. 15, 2024) (stating that an ALJ "'is charged with determining credibility and resolving . . . conflict[s]' between medical evidence" (quoting *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012))).

PAGE 23 – OPINION AND ORDER

exam and Plaintiff's primary care provider recommended a "[h]ealthy lifestyle[]," "[g]etting regular exercise," and further medication management with Nurse Smith; *id.* at 772-76, December 24, 2024, a VE pain specialist advised Plaintiff to consider a "trial of pain relieving antidepressants").

Plaintiff fails to demonstrate that the ALJ committed reversible error in partially discounting his testimony based on conflicting objective medical evidence. Plaintiff fails adequately to address or explain why it was unreasonable for the ALJ to rely on Nurse Smith's consistent reporting of generally normal mental status exams. (*See* Pl.'s Opening Br. at 8-10 & Pl.'s Reply Br. at 3-5.) Plaintiff in turn fails to address other issues relevant to the argument that he advances.

For example, Nurse Smith's mental status exams repeatedly confirmed that Plaintiff's "[t]hought content [was] free of visual or auditory hallucinations." (*See, e.g.*, Tr. 612, 857, making this finding on June 6, 2024 and January 16, 2025). Relatedly, as the Commissioner and ALJ noted, Plaintiff testified about his "hallucinations" at the hearing held on January 29, 2025, yet his providers often make no mention of such findings or subjective reports. (*See* Def.'s Br. at 11, citing mental status exams "free from auditory or visual hallucinations"; *cf.* Tr. 20, 48-49) (simplified).

Responding to the Commissioner's argument regarding exams "free from auditory or visual hallucination," Plaintiff invokes *Ghanim* in arguing that these are the "types of notes" that "by themselves" and "without a more thorough discussion" are insufficient to demonstrate "any contradiction between [his] testimony and the medical record." (Pl.'s Reply at 5, citing *Ghanim, 763 F.3d at 1164*.) *Ghanim* does not support Plaintiff's argument. *Cf. 763 F.3d at 1164* ("When read as a whole, the treatment notes do not undermine [the claimant's] testimony. Rather, they

PAGE 24 – OPINION AND ORDER

consistently reveal that, despite some occasional signs of improvement, [the claimant] continued to suffer frequent . . . *hallucinations*[.]") (emphasis added). Thus, Plaintiff fails to demonstrate reversible error.

For these reasons, the ALJ reasonably discounted Plaintiff's testimony based in part on conflicting objective medical evidence. Thus, the Court finds that the ALJ did not err in discounting Plaintiff's testimony because she provided clear and convincing reasons for doing so. *See Brokaw v. Bisignano*, No. 24-6710, 2025 WL 3158801, at *2 (9th Cir. Nov. 12, 2025) ("Because "the ALJ's rationale is clear enough that it has the power to convince, the ALJ's citation of [conflicting] medical records and . . . activities provided sufficiently specific, clear, and convincing reasons for discounting her subjective testimony . . . [about her] impairments.") (simplified).

## CONCLUSION

For the reasons stated, Court AFFIRMS the Commissioner's decision because it is free of harmful legal error and supported by substantial evidence in the record.

**IT IS SO ORDERED.**

DATED this 30th day of June, 2026.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge

PAGE 25 – OPINION AND ORDER